UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WAYNE BRYANT,

                                 Plaintiff,

                - against -                                         **OPINION AND ORDER**

                                                                   11-cv-7788 (ER)

VILLAGE OF GREENWOOD LAKE and
ANTHONY DASILVA,

                                 Defendants.
-------------------------------------------------------------x

Ramos, D.J.:

    Plaintiff Wayne Bryant ("Plaintiff" or "Bryant") brought this action pursuant to 42

U.S.C. § 1983 ("Section 1983"), alleging that New York State Trooper Anthony Dasilva

("Defendant" or "Dasilva") deprived him of his Fourth Amendment right to be free from

unreasonable searches and seizures.[1]  Doc. 1.  Defendant has moved for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Doc. 18.

    For the reasons discussed below, Defendant's motion for summary judgment is

GRANTED.

## I.      Factual Background

    The events giving rise to the instant action took place at approximately 4:00 p.m. on

December 20, 2010, when Defendant pulled Plaintiff over for a seatbelt violation on Interstate 84

---

[1] Plaintiff's Complaint also stated a cause of action for negligence against the Village of Greenwood Lake.  Doc. 1.
That claim subsequently settled, and the suit against the Village was dismissed, leaving the Fourth Amendment
claim against Dasilva as the sole cause of action in the case.  Doc. 13.

in Montgomery, New York.  Dasilva Dep. 25:15-26:6[2]; Knudsen Decl. Ex. B, at Bryant 1-2.

Upon running Plaintiff's license, Defendant learned that the Village of Greenwood Lake has

issued a bench warrant for Plaintiff.[3]  *Id.* at 35:25-36:20, 37:20-38:4.  The warrant was active and

thus required Defendant to take Plaintiff into custody.  *Id.* at 36:8-36:25.  Defendant called for a

tow truck before returning to Plaintiff's car, informing him of the outstanding warrant, and

placing him in custody.  *Id.* at 51:18-52:4, 59:9-60:13, 63:4-64:2. While waiting for the tow truck

to arrive, Defendant began to inventory the contents of Plaintiff's car.  Bryant Dep. 42:22-42:25,

58:4-58:7[4]; Desilva Dep. 56:11-57:6, 66:24-67-4.  Defendant acknowledges that Plaintiff was

secured in the patrol car during this time, that Defendant did not have a search warrant, that he

did not ask Plaintiff for consent to search the vehicle, and that he did not suspect that there was

any ongoing criminal activity.  Desilva Dep. 67:5-69:21, 75:6-76:3.

　　　The inventory extended to the front seat, rear seat, glove compartment, center console

and trunk.  Bryant Dep. 39:3-39:14, Desilva Dep. 56:11-57:18; Knudsen Decl. Ex. A.  There was

a prescription pill bottle in the center console, which was not labeled with Plaintiff's name.

Bryant Dep. 47:17-48:22, 49:20-50:21; Desilva Dep. 76:4-76:8; Knudsen Decl. Ex. A.  The

bottle contained codeine and hydrocodone.  Bryant Dep. 48:7-48:8; Knudsen Decl. Ex. A.

Following the inventory, Plaintiff's car was impounded.  Bryant Dep. 57:22-58:11.  Defendant

---

[2] Excerpts from Dasilva's deposition are attached as Exhibit D to the Declaration of John Knudsen (Doc. 20) and as Exhibit 1 to Michael H. Sussman's Affirmation in Opposition to Defendant's Motion for Summary Judgment (Doc. 24).  The page references appearing in this opinion refer to the original pagination of the deposition transcript.

[3] The circumstances that gave rise to the bench warrant were the subject of the now-settled cause of action against the Village of Greenwood Lake.  As the basis for the warrant is not relevant to the Fourth Amendment claim against Dasilva, those details will not be discussed here.

[4] Excerpts from Bryant's deposition are attached as Exhibit C to the Declaration of John Knudsen (Doc. 20) and as Exhibit 2 to Michael H. Sussman's Affirmation in Opposition to Defendant's Motion for Summary Judgment (Doc. 24).  The page references appearing in this opinion refer to the original pagination of the deposition transcript.

drove Plaintiff to the State Police barracks, where he issued Plaintiff a traffic ticket for the

seatbelt violation, along with appearance tickets for criminal possession of a controlled substance

in the seventh degree and possession of a controlled substance in a non-original container.

Bryant Dep. 67:2-69:16; Desilva Dep. 80:6-80:11; Knudsen Decl. Ex. B, at Bryant 8, 9, 12.

Plaintiff was then transferred to Greenwood Lake Police Department custody.  Desilva Dep.

80:6-80:11.

## II.     Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

affect the outcome of the litigation under the governing law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the

absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  If the burden of proof at trial would fall on the movant, that party's "own submissions in

support of the motion must entitle it to judgment as a matter of law."  *Albee Tomato, Inc. v. A.B.*

*Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998).  Conversely, "[w]hen the burden of

proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point

to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*,

477 U.S. at 322-23).  If the moving party meets its burden, "the nonmoving party must come

forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

3

avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation mark omitted).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

**III.    Discussion**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.  Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted); *see McCardle v. Haddad*,

131 F.3d 43, 48-49 (2d Cir. 1997) (cataloguing the various exceptions to the warrant requirement).

In the present case, the parties' dispute centers on the interplay between two of these exceptions: the exception for inventory searches of an arrestee's property, and the exception for searches incident to arrest. Defendant seeks summary judgment primarily on the grounds that his search of Plaintiffs' car was constitutional under the inventory search exception. Def.'s Mem. of Law in Supp. 4-7. In opposing the motion, Plaintiff characterizes the search as one undertaken incident to Plaintiff's arrest. Pl.'s Mem. of Law in Opp'n 9. Plaintiff argues that the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), effectively vitiates the inventory search exception to the extent it had previously been applied to vehicle searches. *Id.* at 9-10.

The Court rejects Plaintiff's reading of *Gant* and finds that the inventory search exception continues to apply to vehicle searches. *Gant* was focused exclusively on the exception for warrantless searches incident to arrest. The Supreme Court held that the search-incident-to-arrest exception applies to vehicle searches only if the passenger compartment of the vehicle is within the arrestee's "reaching distance" at the time of the search, or if it is reasonable for the officer to believe that the vehicle contains evidence of the offense that gave rise to the arrest. *Gant*, 556 U.S. at 351. Rather than purporting to impose these restrictions on all warrantless vehicle searches, however, the holding explicitly acknowledges the possibility that alternative exceptions may still apply in a given case. *Id.* ("When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant *or show that another exception to the warrant requirement applies*." (emphasis added)). As Defendant correctly

5

observes, there is nothing in the opinion that speaks to, let alone reverses, existing case law related to those other exceptions.

Moreover, the Second Circuit has continued to analyze and uphold warrantless vehicle searches under the inventory search exception, doing so in an opinion that specifically addressed both inventory searches and searches incident to arrest. *United States v. Henderson*, 439 F. App'x 56 (2d Cir. 2011). Once again, there is no language suggesting that the requirements for the former were somehow altered by or rendered dependent upon the requirements for the latter. The Court of Appeals' decision in *Henderson* accords with case law from other Circuits. *See United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011) (confirming that the "auto exception" to the warrant requirement still applies in the wake of *Gant*, and citing cases from the Fourth, Fifth, Seventh, Eighth and District of Columbia Circuits to demonstrate agreement on this point); *United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010) (distinguishing *Gant* on the grounds that "its ban on warrantless car searches applies to only one exception to the Fourth Amendment's warrant requirement: the search-incident-to-arrest exception"). In ruling on the present motion, the Court must therefore determine whether Defendant's actions constituted a valid inventory search of Plaintiff's vehicle.

The inventory search exception arises out of the need "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Inventory searches will be upheld in situations where the officers "were following standardized procedures" and were not acting "in bad faith or for the sole purpose of investigation." *Id.* An otherwise-reasonable inventory search will not be rendered unreasonable merely because an officer is motivated in part by investigatory purposes or by the expectation that the search will

yield evidence. *See United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) ("When officers, following standardized inventory procedures, seize, impound, and search a car in circumstances that suggest a probability of discovering criminal evidence, the officers will inevitably be motivated in part by criminal investigative objectives.  Such motivation, however, cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes.").  That said, the inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

The existence of a standardized inventory procedure can be demonstrated either via reference to written rules or via testimony describing standard practices.  *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994); *United States v. Flores*, No. 99 CR. 1110 RWS, 2000 WL 1597880, at *2 (S.D.N.Y. Oct. 27, 2000), *modified on reconsideration*, 122 F. Supp. 2d 491 (S.D.N.Y. 2000); *United States v. Ford*, No. 96 CR. 672 (LBS), 1997 WL 538813, at *7 (S.D.N.Y. Aug. 29, 1997).  The procedures themselves do not need to be in written form.  *United States v. Palacios*, 957 F. Supp. 50, 53 (S.D.N.Y. 1997); *see United States v. Mendez*, 315 F.3d 132, 138 (2d Cir. 2002) ("The record amply supports the district court's conclusion that the Hartford Police Department had a consistent, if unwritten, inventory search policy.").

The Second Circuit has spoken inconsistently on the question of which party bears the burden of proving (or disproving) that an exception to the warrant requirement applies in the context of Section 1983 actions.  *See Tirreno v. Mott*, 375 F. App'x 140, 142 (2d Cir. 2010) (discussing, but declining to resolve, the "apparent tension" in Second Circuit precedents).  Under one line of cases, the presumptive unreasonableness of warrantless searches imposes on the defendant a duty to produce evidence of an exception to the warrant requirement, but the

ultimate burden of proof remains on the plaintiff. *See Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991).  Under the other, the presumption of unreasonableness serves to shift the burden of proof, and the defendant is required to demonstrate that the search was valid under one of the exceptions. *See Anobile v. Pelligrino*, 303 F.3d 107, 124 (2d Cir. 2002); *McCardle*, 131 F.3d at 48.  This Court has adopted both approaches in the past.  *Compare MacWade v. Kelly*, No. 05CIV6921RMBFM, 2005 WL 3338573, at *16 n.28 (S.D.N.Y. Dec. 7, 2005) (applying *Ruggiero* in the context of the "special needs" exception), *aff'd*, 460 F.3d 260 (2d Cir. 2006), *with United States v. James*, No. 10 CR 1293 RPP, 2011 WL 6306721, at *5 (S.D.N.Y. Dec. 16, 2011) ("It is undisputed that the police did not have a warrant to search the van, and thus the Government must demonstrate that the search was permissible under one of the 'well-delineated exceptions' to the warrant requirement." (quoting *Schneckloth v. Bustamante,* 412 U.S. 218, 219 (1973))), *aff'd*, 520 F. App'x 41 (2d Cir. 2013), *cert. denied*, No. 13-5289, 2013 WL 3489846 (U.S. Oct. 7, 2013).

In light of the record before the Court, Defendant is entitled to summary judgment under either theory.  In support of his motion, Desilva has provided a signed affirmation that reads, in pertinent part:

> On December 20, 2010, I conducted a vehicle inventory of plaintiff's car. Pursuant to standard policy, plaintiff's car could not be left on the side of I84, and thus I needed to inventory the car contents prior to it being towed and impounded. Pursuant to policy, the inventory I conducted was limited to areas of the vehicle listed on the Vehicle Impound and Inventory Record document that were applicable to this situation, which are locations where in general valuables can be stored.  Additionally, pursuant to policy, I drafted a Vehicle Impound and Inventory Record while conducting the inventory.  A copy of the Vehicle Impound and Inventory Record is attached to this Affirmation as Bryant 16.  It was during this inventory that I located the non-original prescription pill bottle with narcotics.

Knudsen Decl. Ex. A.

8

The "Vehicle Impound and Inventory Record" to which Desilva refers is a one-page form with that heading printed across the top.  *Id.*  The form requests numerous pieces of information, including the name of the police officer requesting the tow, the identity of the tow service and operator, the time the tow truck was requested, the time the truck arrived and departed, and the locations from and to which the vehicle was towed.  *Id.*  It also collects information about the impounded vehicle and its driver, including whether the vehicle had been damaged.  *Id.*  The bottom portion of the form is labeled "Inventory."  *Id.*  This section asks for information about the location at which the inventory was conducted, as well as the time the inventory began and the time it ended.  *Id.*  It then lists interior and exterior areas of the car—front seat, rear seat, glove box, console, trunk and "other storage area"—along with boxes for the officer to check when those areas are searched.  *Id.*  This portion of the form is accompanied by two larger blank boxes that call for descriptions of any valuables found in the interior and exterior areas searched.  *Id.*

The evidence makes plain that Defendant conducted a vehicle inventory of Plaintiff's car.  Plaintiff was in custody and his car was on the side of the interstate, thus necessitating that it be impounded.  Defendant documented the incident on a standardized form designed for such situations.  The information collected on the form created a record of the vehicle's contents and condition, thus furthering the property-protection and liability-reduction purposes that the inventory search exception was designed of serve.  Plaintiff, in advancing his *Gant*-based theory of the case, never challenges Defendant's assertion that he conducted a vehicle inventory.  Instead, Plaintiff attempts to dismiss Defendant's characterization by calling it "a distinction without a difference."  Pl.'s

Mem. of Law in Opp'n 9.  Plaintiff is mistaken on this point, since inventory searches remain a "well-delineated exception" to the warrant requirement, separate and apart from any other exceptions that may or may not apply in a particular case.  As long as Defendant's conduct satisfies the requirements imposed on inventory searches, then those actions are reasonable under the Fourth Amendment.

Plaintiff does not offer any evidence to challenge the statements contained in Defendant's affirmation.  Indeed, rather than addressing the requirements of the inventory search exception at all, Plaintiff's case relies solely on his misreading of *Gant*. Desilva's uncontroverted testimony, accompanied by the "Vehicle Impound and Inventory Record," thus serves to establish that both his decision to search the vehicle and the procedure he followed in conducting it were dictated by standard police policy. The areas of the car that Defendant searched correspond to those areas listed on the "Vehicle Impound and Inventory Record."  As discussed above, it is not necessary that Desilva produce a formal, written set of procedures; his testimony as to standard practice is sufficient.  Moreover, nothing in the record undermines Defendant's claim that his actions were driven by the need to remove the car from the side of the highway.  There is certainly no basis to conclude that he was motived *solely* by investigatory purposes.

Even assuming, *arguendo*, that defendants in civil actions bear the burden of proof as to the constitutionality of an inventory search, Defendant has satisfied that burden in this case.  The Court therefore finds that Defendant's warrantless search of Plaintiff's car was reasonable under the Fourth Amendment, and Plaintiff's claim must fail as a matter of law.

10

**IV.      Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment is

GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion (Doc. 18)

and to close this case.

It is SO ORDERED.

Dated:      November 6, 2013
             New York, New York

_____
Edgardo Ramos, U.S.D.J.